Filed 8/6/26  P. v. Chavez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MANUEL HERNANDEZ CHAVEZ,<br><br>    Defendant and Appellant. | F089258<br><br>(Super. Ct. No. PCF311104)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Robert A. Fultz, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, and Manuel Hernandez Chavez, in propria persona, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Meehan, J. and Guerra, J.

## INTRODUCTION

On December 18, 2014, a man was shot and wounded at a self-service car wash in Earlimart. The investigation led to appellant and petitioner Manuel Hernandez Chavez (appellant) and two other suspects. Appellant was charged with premeditated attempted murder and other offenses, with gang and firearm enhancements and prior conviction allegations.

In 2019, appellant pleaded no contest to attempted murder, and the trial court dismissed the premeditation allegation and the other felony charges. Appellant also admitted firearm and gang enhancements and prior conviction allegations. He was sentenced to the second-strike term of 15 years. His sentence was later reduced to 14 years after dismissal of the prior prison term enhancement.

In 2022, appellant filed a petition for resentencing of his attempted murder conviction pursuant to Penal Code[1] section 1172.6. The trial court conducted the prima facie hearing and found he was ineligible for resentencing and denied the petition. In doing so, the court, over appellant's objections, stated it was relying on its own recollection of the evidence since it had presided over the preliminary hearing, and conducted the plea and sentencing hearings. On appeal, this court reversed the trial court's prima facie finding and remanded the matter for issuance of an order to show cause (OSC) and an evidentiary hearing.

On remand, the matter was assigned to another judge, who issued the OSC and conducted the section 1172.6 evidentiary hearing. The prosecutor called witnesses to testify at the evidentiary hearing. The trial court granted the prosecutor's request to take judicial notice of the preliminary hearing transcript. Appellant objected to hearsay evidence in the preliminary hearing transcript. In ruling on the petition, the court stated it

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated.

was only relying on nonhearsay evidence from the preliminary hearing transcript, and the testimony of witnesses who appeared at the evidentiary hearing.

The trial court denied appellant's petition and found beyond a reasonable doubt that appellant was a direct aider and abettor who acted with the intent to kill, and he was still guilty of attempted murder after the amendments enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) and Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775).

Appellant now appeals from the trial court's denial of his petition after the evidentiary hearing. Appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216.

Appellant filed a supplemental letter brief and raises several issues.[2] We review the facts introduced at the evidentiary hearing, the preliminary hearing evidence which the trial court considered, and appellant's contentions, and affirm the court's denial of the petition.

---

[2] On March 2, 2026, this court filed an order in this appeal advising appellant that his attorney filed an opening brief pursuant to *Delgadillo*, appellant could file a supplemental letter brief raising any arguable issue within 30 days, and if he failed to do so, the appeal would be dismissed pursuant to *Delgadillo*. Appellant did not file a supplemental letter brief within the time period.

On May 7, 2026, while this appeal was pending, appellant filed, in propria persona, a separate petition for writ of habeas corpus with this court, seeking review of the trial court's denial of his section 1172.6 petition after the evidentiary hearing.

This court filed an order that denied appellant's writ petition, but we also construed the claims raised in his petition "as a timely filed supplemental brief responsive to this court's March 2, 2026 order" for supplemental briefing in this appeal. We directed the Clerk/Executive Officer of this court to file appellant's writ petition as his supplemental letter brief in his appeal in case No. F089258. We address appellant's contentions below.

**FACTS**

As explained above, appellant pleaded no contest to attempted murder after the preliminary hearing.  The instant appeal is from the trial court's denial of appellant's section 1172.6 petition after it conducted the evidentiary hearing.  The prosecutor also called witnesses to testify at the evidentiary hearing.

Also at the evidentiary hearing, the trial court granted the prosecutor's request to take judicial notice of the preliminary hearing transcript.  Defense counsel objected to hearsay evidence in the preliminary hearing transcript.  The court stated it would not consider any hearsay evidence from officers which was admitted at the preliminary hearing pursuant to section 872, subdivision (b).[3]

The following factual statement is thus limited to the evidence that the trial court stated it relied on to deny appellant's petition after the section 1172.6 evidentiary hearing: the nonhearsay evidence from the preliminary hearing that was based on a testifying witness's personal knowledge, and the testimony of the witnesses who appeared at the evidentiary hearing.

**Preliminary Hearing Evidence About the Shooting Scene**

At the preliminary hearing, Sergeant Merced Zamora of the Tulare County Sheriff's Department testified that on December 18, 2014, he responded to a shooting scene at a gas station and self-service car wash in Earlimart.  The car wash had individual drive-in car bays.

---

[3]    As will be discussed below, section 1172.6, subdivision (d)(3) states that at the evidentiary hearing on the petition, "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

Section 872, subdivision (b) states the trial court's probable cause finding at a preliminary hearing may be based "in whole or in part upon the sworn testimony of a law enforcement officer" relating hearsay statements of declarants.

4.

Zamora testified he observed a large amount of blood on the ground just south of bay six of the car wash, and a couple of droplets of blood on the north side of bay six that led across the street.

Zamora also observed that one of the cinderblocks within bay six "looked like it had been [*sic*] striked or been shot at."

Detective Rodney Klassen testified the victim shot in bay six was taken to the hospital. The victim was left paralyzed by gunshot wounds.

**Evidentiary Hearing Testimony About the Car Wash Videos**

At the section 1172.6 evidentiary hearing, the prosecutor called Zamora to testify about a series of security videos that recorded the events prior to, during, and immediately after the shooting in bay six. The videos were played in the courtroom, and Zamora testified about the events shown on the videos.

Zamora testified that a video showed a black or dark-colored SUV pull into bay six at the car wash. The SUV was later identified as the vehicle driven by the victim.

Zamora testified that at the same time as the SUV arrived at the car wash, three people got out of a car that was parked across the street from the car wash. Zamora described the clothing worn by each suspect who got out of this car: (1) one person wore a sweatshirt that said "Cali" on it, who was later identified as the shooter; (2) another person wore a sweatshirt with a square image and words on it that did not say "Cali," who was later identified as appellant, and (3) the third person had a thin physique and wore a solid-colored sweatshirt.

Zamora testified the video showed appellant, the suspect wearing the sweatshirt that did not say "Cali" walked into bay six of the car wash, and the other two suspects followed him. Appellant approached the passenger door of the SUV, opened the passenger door, and then closed that door. Appellant walked over to the driver's side of the SUV, opened the driver's door, and leaned into the vehicle. A man got out of the driver's side of the SUV, and he was later identified as the shooting victim.

Zamora testified the video showed appellant, the suspect who got the victim out of the SUV held the victim's right shoulder and walked him to the rear of the SUV. The suspect wearing the "Cali" sweatshirt was standing at the rear of the SUV, and this person slowly stepped back and moved his hand to his waistband. Appellant appeared to pull the victim to the rear of the SUV. The suspect wearing the "Cali" sweatshirt pulled a handgun from his waistband and pointed it at the victim's upper body.

The trial court clarified that the video showed the person in the "Cali" sweatshirt pointed a gun at the victim but nothing happened. The court also stated the victim reached out with his left arm and tried to grab the gun or push it away.

Zamora testified the suspect in the "Cali" sweatshirt then shot the victim multiple times. The victim fell down and rolled around on the ground, he was bleeding, and no one assisted him. Someone in the SUV immediately drove away from the car wash.

Zamora testified the video showed that after the victim went down, the suspect in the sweatshirt that did not say "Cali" held his right hand over the right side of his face. Appellant kept his hand on his face, and with his other hand, he appeared to be "connecting hands" or "touching hands" with the third suspect who was wearing the solid-colored sweatshirt, and it "[a]lmost look[ed] like a handshake."

Zamora testified the three suspects ran out of bay six to their car across the street, got into their parked car, and left the scene.

Zamora testified the blood that he saw on the ground in bay six corresponded to the area where the victim fell after he was shot. Zamora testified the blood drops that were leading out of bay six were consistent with the path the three suspects took when they ran away from the car wash, and went back to their car across the street after the shooting.

**Evidentiary Hearing Testimony About the Hospital Videos**

Also at the evidentiary hearing, Zamora testified that on the day of the shooting, he determined that appellant had been admitted to the hospital in Delano. Zamora

6.

obtained and reviewed videos from the hospital's security cameras. Zamora testified the videos showed appellant in the hospital as he talked to hospital staff, and that he had facial injuries that were bandaged.

Zamora testified he compared appellant's appearance in the hospital videos, with the car wash videos of the suspect wearing the sweatshirt that did not say "Cali" and who held a certain part of his face after the shooting. Zamora testified appellant's facial injuries and bandages, as shown in the hospital videos, were consistent with the same facial area that the suspect, who was not wearing the "Cali" sweatshirt, held onto immediately after the victim was shot. Appellant's physical characteristics were also consistent with the person at the car wash who was not wearing the "Cali" sweatshirt and who took the victim out of the SUV, and inconsistent with the other two suspects' appearances.

Kara Ward, a criminalist with the Department of Justice, testified at the evidentiary hearing that the blood droplets found in the area of the car wash bay matched appellant's DNA.

**Preliminary Hearing Evidence About Apprehension of Appellant**

At the preliminary hearing, Sergeant Steven Sanchez testified that on December 28, 2014, he was part of a team watching a car connected to appellant, and the car was parked outside a house. Sanchez testified appellant walked out of the house and drove away in that car. Sanchez and another deputy followed appellant's car. Sanchez testified the lead deputy activated the lights and siren on his marked patrol car and attempted to conduct a traffic stop. Appellant kept driving. Sanchez testified appellant eventually stopped the car, jumped out, and ran away. Sanchez and the other deputy ran after appellant and repeatedly ordered him to stop. Appellant kept running, but Sanchez and the second deputy tackled him.

7.

Sanchez testified he participated in executing a search warrant for the house that appellant had left. Sanchez searched a bedroom and found a bag that contained a debit card registered to appellant, along with 23 live rounds of nine-millimeter ammunition.

## THE PLEA AND SENTENCING

On November 22, 2016, an information was filed in the Tulare County Superior Court charging appellant with count 1, premeditated attempted murder (§§ 187, subd. (a), 664, 189); count 2, assault with a semiautomatic firearm (§ 245, subd. (b)); count 3, felon in possession of ammunition (§ 30305, subd. (a)(1)); and count 4, resisting or obstructing a peace officer (§ 148, subd. (a)(1)), with firearm and gang enhancements, two prior strike convictions, and other prior conviction allegations.

On May 3, 2019, appellant pleaded no contest to count 1, attempted murder, and admitted a gang enhancement (§ 186.22, subd. (b)(1)(C)) and a firearm enhancement (§ 12022.5). He also admitted one prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), one prior serious felony conviction enhancement (§ 667, subd (a)(1)), and two prior prison term enhancements (§ 667.5, former subd. (b)). The trial court stated the premeditation allegation as to count 1, and the other charges and enhancements, would be dismissed.

The trial court stated the indicated aggregate sentence was 15 years and it would strike or stay the admitted enhancements at the sentencing hearing.

On June 5, 2019, the trial court sentenced appellant to the aggregate term of 15 years, based on the midterm of seven years for attempted murder doubled to 14 years as the second strike sentence (§§ 187, subd. (a), 664, subd. (a)), plus one year for the section 667.5, subdivision (b) prior prison term enhancement. The court dismissed the remaining counts and allegations, and stayed the terms imposed for the firearm enhancement, the prior serious felony conviction enhancement, the gang enhancement, and the second prior prison term enhancement.

Appellant's aggregate sentence was subsequently reduced to 14 years when the trial court dismissed the prior prison term enhancement that subsequently became invalid.

## SECTION 1172.6 PETITION FOR RESENTENCING

On November 9, 2022, appellant filed a petition in the trial court for resentencing of his attempted murder conviction pursuant to section 1172.6, and checked boxes on a preprinted form to allege he accepted a plea in lieu of a trial where he could have been convicted of attempted murder under a now-invalid theory of imputed malice. The prosecutor filed an opposition.

## The Prima Facie Finding

On February 2, 2023, Judge Reyes, who conducted the preliminary hearing, and the plea and sentencing hearings, convened the prima facie hearing and stated:

> "I'm the judge that took the plea back when he took a plea .… The specific incident involved alleged that [appellant] was part of a group, one or two or maybe three, who were involved in basically setting up someone at a car wash in Pixley or Earlimart, if I remember correctly. And when the plea was entered, to my recollection, clearly was that his plea was a principal and it may not have been that he was the shooter, but he clearly was one of the individuals present that set up the incident.

> "Now, I don't have any file. For whatever reason, basically they gave me a dummy file with only some of the pleadings. So initially I understand your arguments, but factually I don't think he's eligible."

Defense counsel objected and argued the trial court could not make factual findings or credibility determinations at the prima facie hearing. Counsel asserted the court could not " 'take into account any investigation' " or " 'go outside the petition,' " and it was required to " 'accept what is contained in the petition is true.' " The court asked: " 'Even if the petition is incorrect?' " Defense counsel asked the court to state on the record " 'what in the petition is not accurate.' " The court asked whether the parties had any further argument, and they submitted the matter.

9.

The court denied the petition for failing to state a prima facie case based on its own recollection of the case.[4]

**Appellant's First Appeal**

On appeal from the denial of his petition, appellant argued the trial court erroneously made factual findings at the prima facie hearing to find he was ineligible for resentencing as a matter of law. The People conceded appellant filed a facially sufficient petition and the court impermissibly made factual findings to deny the petition at the prima facie hearing. The People further conceded the case must be remanded for the court to issue an OSC and conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).

In *People v. Manuel Hernandez Chavez* (Apr. 9, 2024, F085714), this court filed the nonpublished opinion where we accepted the People's concession, and reversed and remanded the matter to the trial court with directions to issue an OSC and conduct an evidentiary hearing pursuant to section 1172.6.

## THE EVIDENTIARY HEARING

On remand, Judge Fultz appointed counsel, issued the OSC, and set a briefing schedule for the evidentiary hearing on appellant's petition.

---

[4] At appellant's prima facie hearing, neither the prosecutor nor the trial court relied on the preliminary hearing transcript as part of the record of conviction. The prima facie hearing was held prior to our Supreme Court's decision in *People v. Patton* (2025) 17 Cal.5th 549, which held the "record of conviction" for purposes of a section 1172.6 prima facie determination includes the transcript of a preliminary hearing preceding a guilty plea. (*Id*. at p. 568.) *Patton* further held that a petitioner who, "despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id*. at p. 565.) "[P]etitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id*. at p. 567.)

The prosecutor moved for the trial court to take judicial notice of the preliminary hearing. The court granted the request. The prosecutor stated he would submit on the preliminary hearing transcript.

The trial court conducted the evidentiary hearing on December 16, 2024, and January 13, 2025. As summarized above, the prosecutor called Zamora and Ward, the DNA witness, to testify at the evidentiary hearing, and also relied on the preliminary hearing transcript.

**The Parties' Arguments**

At the evidentiary hearing, defense counsel argued the prosecutor could not rely on hearsay testimony from officers who testified at the preliminary hearing pursuant to section 872, subdivision (b).

The prosecutor agreed that section 872, subdivision (b) hearsay testimony was admitted at the preliminary hearing, and that such hearsay testimony was inadmissible at the section 1172.6 evidentiary hearing. However, the prosecutor argued Zamora's preliminary hearing testimony about his interview with the victim was separately admissible under Evidence Code section 1370's "physical injury" exception to the hearsay rule, and the victim was unavailable because he appeared to be evading process.[5]

The prosecutor argued that while appellant was not the shooter, he directly aided and abetted the attempted murder with the intent to kill the victim. The prosecutor asserted the car wash videos showed "a planned, orchestrated attack" on the victim, and that appellant acted with the intent to kill. The evidence proved appellant was the person

---

**5** Evidence Code section 1370, subdivision (a) defines the physical injury exception to the hearsay rule, and states a hearsay statement is admissible if the statement "purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant," the declarant is unavailable as a witness, the statement was made at or near the time of the infliction or threat of physical injury; the statement was made under circumstances that would indicate its trustworthiness; and the statement was made to a law enforcement official.

11.

who got out of the car across the street from the car wash, wearing the sweatshirt with words on it that did not say "Cali." Appellant opened the driver's door of the SUV, leaned in, and pulled the victim out of the SUV. Appellant pulled the victim to the rear of the SUV, and held onto him as the shooter pulled a gun and tried to shoot him. The first shot may have misfired, but the shooter cleared the weapon and shot the victim.

The prosecutor also pointed to appellant's conduct after the shooting that proved his intent to kill. The car wash videos showed that after the victim was shot, appellant and another suspect were "basically giving each other a high five or handshake or some other motion where their hands are making contact," which showed appellant "was satisfied with the results, that this was a plan that had been executed in a manner that he found to be satisfactory .…" [¶] "There's no other purpose for them to do that. There's no reason for them to make contact with each other, but to express that they are pleased or satisfied with the results."

Defense counsel argued the evidence did not show appellant had the intent to kill, that he knew any shooting was going to take place, or that he knew one of the suspects had a gun. Counsel argued the videos instead showed appellant's conduct was "insignificant."

**The Trial Court's Ruling**

On January 13, 2025, the trial court made its ruling after the evidentiary hearing. The court held that in order for appellant to still be guilty of attempted murder after the amendments enacted by Senate Bills 1437 and 775, he had to be either the actual shooter, or a direct aider and abettor who acted with the intent to kill.

The trial court denied appellant's petition and explained the evidence that it relied on to make this ruling:

> "In reviewing the evidence in this matter, determining the result, I will note that I am giving great weight to the testimony that was given actually here in court [at the evidentiary hearing], the video that was

12.

played, the testimony relating to the video, the testimony given …
regarding the DNA testing.

"As far as the preliminary hearing transcript, which I have reviewed
in full, I'm only considering the evidence to which individuals testified of
their direct knowledge.  I'm not considering any hearsay evidence that was
presented at the preliminary hearing, nor am I considering the evidence
presented that [the prosecutor] has proffered.  While I do believe [the
prosecutor] has met the burden of Evidence Code section 1370 [as to the
victim's hearsay statements], I'm not using that evidence in my ruling in
this matter.

"I do find by proof beyond a reasonable doubt that [appellant]
harbored the intent to kill based on all of the evidence in this matter.  I find
that he does not meet the requirements for relief pursuant to …
[s]ection 1172.6, and I am denying the petition on those grounds that *he
did, in fact, through his actions indicate that he harbored the intent to kill*
and was therefore not eligible for relief."

On January 28, 2025, petitioner filed a timely notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to

*Wende* and *Delgadillo*.  The brief also included counsel's declaration that appellant was

advised he could file his own brief with this court.  This court also advised appellant that

he could file a supplemental letter brief.  Appellant filed a supplemental letter brief and

raises several arguments.

## I.  Section 1172.6

First, appellant asserts the trial court improperly gave "great weight" to certain

evidence when it denied his petition, and that in doing so, it erroneously made factual and

credibility findings and violated section 1172.6 by going "outside the petition" to deny

relief.  Appellant's arguments, however, confuse the procedures in a section 1172.6

petition.

## A.  Senate Bills 1437 and 775

We begin with Senate Bill 1437, which became effective in 2019 and "altered the

substantive law of murder in two areas.  First, with certain exceptions, it narrowed the

13.

application of the felony-murder rule by adding section 189, subdivision (e) .…  Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection  190.2.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)

"Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder.  [Citation.]  'Malice shall not be imputed to a person based solely on his or her participation in a crime.'  [Citation.]  One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine.  [Citation.]  …  Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault.  [Citation.]  The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime.  [Citation.]  Senate Bill 1437 ended this form of liability for murder." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 449; *People v. Harden* (2022) 81 Cal.App.5th 45, 51–52.)

As will be discussed below, Senate Bill 1437's amendments did not eliminate direct aiding and abetting because a direct aider and abettor must possess intent to kill. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252 (*Williams*).)

Senate Bill 1437 "added former section 1170.95, which created a process for those convicted of murder under now obsolete accomplice liability theories to seek vacatur and resentencing." (*People v. Ramos* (2025) 112 Cal.App.5th 174, 183.)

14.

Effective January 1, 2022, the Legislature revised section 1170.95 through the passage of Senate Bill 775, which permits petitioners convicted of attempted murder and manslaughter under now-invalid theories to seek relief. (*People v. Ramos*, *supra*, 112 Cal.App.5th at p. 183.)

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no further change in text. (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 446, fn. 1.)

**B. The Prima Facie Determination**

Section 1172.6 states that a petitioner may file a petition for resentencing if "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter .…" (§ 1172.6, subd. (a), italics added.)

The petitioner must declare: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection[s] 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

After counsel is appointed and the parties have the opportunity to submit briefing, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

15.

In making the prima facie determination, the trial court may look at the record of conviction to determine whether a petitioner has made the prima facie showing. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The court cannot engage in factfinding or make credibility findings when making the prima facie determination. (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.)

## C. The Evidentiary Hearing

"Once a petitioner establishes a prima facie case for relief and the superior court issues an [OSC], the matter proceeds to an evidentiary hearing .…" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection[s] 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

"The admission of evidence in the [evidentiary] hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, the trial court acts as an independent fact finder, makes credibility determinations, weighs the evidence, and determines whether the People met its burden to prove beyond a reasonable doubt that defendant was still guilty of murder

16.

after the amendments to sections 188 and 189. (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457; *People v. Gudiel* (2024) 107 Cal.App.5th 848, 858; *People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Harden*, *supra*, 81 Cal.App.5th at p. 51.)

"Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of [a section] 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.' " (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.)

If the trial court "finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6." (*Vargas*, *supra*, 84 Cal.App.5th at p. 951.)

**D. Analysis**

As discussed above, the trial court conducted the prima facie hearing prior to the Supreme Court's ruling in *Patton* that clarified the preliminary hearing transcript constitutes part of the record of conviction to make the prima facie finding in a plea case under certain circumstances. (*People v. Patton*, *supra*, 17 Cal.5th at pp. 557, 564.) The court did not rely on or even cite to the preliminary hearing transcript when it denied his petition at the prima facie hearing. Instead, as this court held in appellant's prior appeal, the trial court improperly denied appellant's petition at the prima facie hearing because it made factual and credibility findings based on its *own* recollection of the preliminary

hearing evidence. We reversed and remanded for the court to conduct an evidentiary hearing.

Appellant now contends that when the trial court denied his petition after the evidentiary hearing, the court improperly gave " 'great weight' " to certain evidence, erroneously made factual and credibility findings about the witnesses, and it again violated section 1172.6 by going " 'outside the petition' " to deny relief.

Such arguments would be relevant to the trial court's prima facie determination. Indeed, this court reversed the trial court's erroneous factual findings when it denied appellant's petition for failing to state a prima facie case, and we remanded the matter for issuance of the OSC and an evidentiary hearing. At the evidentiary hearing, however, the court acts as an independent fact finder and may make credibility determinations, weigh the evidence, and determine whether the People met its burden to prove beyond a reasonable doubt that defendant was still guilty of murder, attempted murder, or manslaughter after the statutory amendments enacted by Senate Bills 1437 and 775. (*People v. Rodriguez, supra*, 103 Cal.App.5th at p. 457; *People v. Gudiel, supra*, 107 Cal.App.5th at p. 858.)

The trial court properly made factual and credibility findings when it evaluated the evidence introduced at the evidentiary hearing and denied appellant's petition.

## II.  Appellant's Contentions About the Trial Court's Ruling

We next address appellant's claims about the trial court's alleged legal and evidentiary errors at the evidentiary hearing. In doing so, we note that on appeal from the court's denial of a section 1172.6 petition after an evidentiary hearing, we review questions of law independently, and review the court's evidentiary rulings for an abuse of discretion. (*People v. Reyes* (2023) 14 Cal.5th 981, 988; *People v. Waidla* (2000) 22 Cal.4th 690, 724.)

"We review the trial judge's fact finding for substantial evidence. [Citation.] We ' "examine the entire record in the light most favorable to the judgment to determine

whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 298.)

### A. Appellant's Hearsay Claims

Appellant asserts that the trial court stated at the evidentiary hearing that it would only consider preliminary hearing testimony from witnesses that was based on their own personal knowledge, and it would not rely on any hearsay evidence. He complains the court improperly relied on Zamora's hearsay testimony at the preliminary hearing about the victim's statements.

Appellant's argument is refuted by the entirety of the record. At the beginning of the evidentiary hearing, the trial court granted the prosecutor's request to take judicial notice of the preliminary hearing transcript. Defense counsel objected and argued that hearsay evidence from the preliminary hearing transcript was inadmissible at the evidentiary hearing. The prosecutor agreed that the court could not consider hearsay evidence from a law enforcement officer who testified at the preliminary hearing pursuant to section 872, subdivision (b). The prosecutor argued, however, that Zamora's testimony at the preliminary hearing about his interview with the victim was separately admissible under the "physical injury" exception to the hearsay rule stated in Evidence Code section 1370, subdivision (a).

At the conclusion of the evidentiary hearing, the trial court expressly stated which evidence it would consider from the preliminary hearing to make its findings:

"As far as the preliminary hearing transcript, which I have reviewed in full, I'm only considering the evidence to which individuals testified of their direct knowledge. I'm not considering any hearsay evidence that was presented at the preliminary hearing, nor am I considering the evidence presented that [the prosecutor] has proffered. While I do believe [the prosecutor] has met the burden of Evidence Code section 1370 [as to the victim's hearsay statements], I'm not using that evidence in my ruling in this matter."

Appellant's hearsay claims are thus refuted by the trial court's statements when it denied his petition after the evidentiary hearing—that it denied the prosecutor's motion and did not consider the victim's hearsay statements.

## B. Appellant's Intent to Kill

Appellant acknowledges that in order for the trial court to find he was a direct aider and abettor to the attempted murder, the court had to find he acted with the intent to kill. Appellant argues the court's denial of his petition was entirely based on the car wash videos, he was not identified in those videos, and the videos and DNA evidence did not prove that he " 'harbored' " any kind of intent or knew what was going to happen.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) After the amendments enacted by Senate Bills 1437 and 775, the Legislature eliminated the natural and probable consequences theory of attempted murder, but did not eliminate the direct aider and abettor theory of attempted murder. (*People v. Richee* (2025) 111 Cal.App.5th 281, 294; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204–205; *Williams*, *supra*, 86 Cal.App.5th at p. 1252.)

To be guilty of attempted murder as a direct aider and abettor, "a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*People v. Lee*, *supra*, 31 Cal.4th at p. 624.)

20.

"A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.' " (*Williams*, *supra*, 86 Cal.App.5th at p. 1252.) The direct aider and abettor must "necessarily 'know and share the murderous intent of the actual perpetrator.' " (*People v. Offley* (2020) 48 Cal.App.5th 588, 596.) Direct evidence of a defendant's malice and intent to kill rarely exists, and it may be inferred from the circumstances of the crime and the defendant's words and actions. (*People v. Smith* (2005) 37 Cal.4th 733, 741; *People v. Sanchez* (2016) 63 Cal.4th 411, 457.)

### *Analysis*

The trial court's finding that appellant was still guilty of attempted murder as a direct aider and abettor is supported by substantial evidence. First, the entirety of the record establishes that appellant was the suspect who got out of the car that was parked across the street from the car wash, he was with two other suspects, and he was the person wearing the sweatshirt with words that did not say "Cali." Zamora testified this suspect held his right hand over the right side of his face immediately after the shooter shot the victim, raising the inference that this suspect was somehow injured during the shooting. Zamora testified he noticed that one of the cinderblocks in bay six appeared to have been damaged by a bullet.

Zamora further testified that he compared this suspect's appearance in the car wash videos, with videos from the hospital where appellant sought treatment on the same day as the shooting. Zamora testified the suspect at the car wash, who was wearing the sweatshirt that did not say "Cali," was holding the right side of his face immediately after the shooting, and the hospital videos showed appellant's face was injured and bandaged in the same area. Zamora further testified appellant's physical appearance matched the suspect at the car wash wearing the sweatshirt that did not say "Cali." Moreover, the prosecutor introduced evidence that visible blood droplets led out of bay six and toward

the area where the three suspects ran back to their car after the shooting, and these blood droplets matched appellant's DNA.

Based on this evidence, the prosecutor proved appellant was the suspect wearing the sweatshirt that did not say "Cali" and that he acted with the intent to kill. Appellant and the two other suspects got out of their car as soon as the victim's SUV pulled into the car wash bay. Appellant walked directly to the SUV, opened the passenger door, looked inside, closed the passenger door, and then walked to the driver's door. Appellant opened the driver's door, leaned in, and the victim got out of the driver's seat of the SUV. Appellant held the victim's arm and forced him to the rear of the SUV, where the shooter pulled a gun and the weapon may have misfired. The shooter eventually re-racked the weapon and shot the victim. The car wash videos showed that immediately after the shooting, appellant held his right hand on the right side of his face where he was apparently injured, but he used his other hand to either shake hands or high five the third suspect in the dark colored sweatshirt as they ran back to their car, and constitutes circumstantial evidence that appellant knew the victim was going to be shot and approved of their joint efforts to make it happen.

The trial court's finding that appellant was a direct aider and abettor who acted with the intent to kill is thus supported by substantial evidence. Appellant was identified based on the comparisons of the car wash and hospital videos, and his actions at the car wash constitutes circumstantial evidence that he knew and shared the murderous intent of the actual gunman, he aided and abetted the actual gunman with knowledge of that person's unlawful purpose, and he demonstrated his approval that the gunman shot the victim.

## DISPOSITION

The trial court's ruling on January 13, 2025, denying appellant's section 1172.6 petition for resentencing after the evidentiary hearing, is affirmed.

22.